IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
SHARIFF BLACKWELL,              :
      Plaintiff,              :
   v.                            :   CASE NO. 14-878
                                            :
ALLSTATE INSURANCE CO.,        :
      Defendant.              :
_____:

## MEMORANDUM OPINION

**RUFE, J.**                                                                                    September 3, 2014

       Plaintiff Blackwell has brought this action against defendant Allstate Insurance Co. for breach of contract, statutory bad faith, and common law bad faith. Specifically, Blackwell contends that Allstate failed to fully indemnify him for damages to his home that resulted from a water leak and subsequent vandalism by a contractor, in March 2011. Allstate has moved to dismiss the claims, arguing that the suit limitations provision in the insurance policy bars the breach of contract claims, that the statute of limitations bars his statutory bad faith claim, and that his common law bad faith claim must be dismissed as a matter of law.

## I.    Factual Background[1]

      On or about March 2, 2011, Plaintiff's home in Philadelphia, Pennsylvania was damaged by water when a pipe in a second floor bathroom failed. At that time, Plaintiff had a homeowner's insurance policy issued by defendant Allstate.

       The day the leak occurred, Plaintiff hired Hillis Public Adjusters to assist him in filing an insurance claim for damages. Hillis contacted Allstate on or about March 4, 2011, to initiate a claim for water damage, and hired a water remediation company, National Restoration and

---

[1] The facts set forth herein are taken from the Amended Complaint, except where otherwise noted, and are assumed true for the purpose of resolving this motion.

Facilities Services, to mitigate the damage to Plaintiff's home. National Restoration unnecessarily stripped walls to their framing studs, pulled up carpets, removed a bathtub, and removed a load-bearing floor joist, which caused part of Plaintiff's first floor to sink. A representative of Allstate inspected the property on March 8, 2011, spoke with Plaintiff's plumbing contractor, and documented both the water damage and the work in progress by National Restoration. Allstate determined that National Restoration had performed extensive, unnecessary, and destructive remediation work in the home, causing additional damage to the residence. On May 3, 2011, Plaintiff fired the public adjuster. On or about May 5, 2011, Allstate advised him of the need to set up a new claim for vandalism, as some of the damage to the home was caused by the work of National Restoration. The home was re-inspected on May 24, 2011, to determine which damage was caused by water and which was caused by National Restoration, and estimates were prepared. For each instance of water damage and vandalism, the policy allows up to $184,084 in compensation for vandalism to the dwelling, $101,901 for damage to personal property, and $18,408 for living expenses due to loss of use of the dwelling.[2]

On June 22, 2011, Allstate issued estimates to Plaintiff for both claims. Significantly, with regard to the water damage claim, a second estimate was prepared and adjusted to include the estimated cost to repair damage to the air ducts and furnace. Allstate's revised estimate valued the replacement cost to be $9,437 and the actual cash value to be $6,933 for water damage. After subtracting the deductible, Allstate issued a payment of $5,933 for the water damage, and informed Plaintiff that, per the terms of his policy, he had 180 days to repair, rebuild, or replace the damaged property and request the depreciation amount in addition to the sums already paid by Allstate. Under the vandalism claim, Allstate estimated the replacement

---

[2] Amend. Compl. Exhibit A at 5.

cost value to be $7,305 and the actual cash value to be $6,203. After subtracting the deductible, Allstate issued a payment of $5,203 for the vandalism claim and advised Plaintiff that, per the terms of his policy, he had 180 days to repair, rebuild, or replace the damaged property and request the depreciation amount. On February 9, 2012, Defendant completed an estimate for damages to the contents in Plaintiff's home, estimating the replacement cost at $10,386 and the actual cash value to be $9,661, and advised Plaintiff that, per the terms of his policy, he had 180 days to repair or replace the damaged items and request the depreciation amount. Allstate also paid nearly $18,000 in living expenses to Plaintiff.

     Plaintiff returned to his home in the spring of 2012. In October or November 2012, he attempted to use the furnace, but discovered that it was not working and needed to be replaced. Plaintiff asked Allstate to compensate him for the replacement cost of the furnace, claiming it was made inoperable either by the water damage or the vandalism that occurred in 2011. Allstate denied the claim on November 13, 2012, explaining that an unreasonable amount of time (approximately 20 months) had passed between the initial claims and the discovery of the damage to the furnace. Thus, Plaintiff received only approximately $1,000 for the damage to the ducts and furnace (in the June 22, 2011 disbursement) and not the full replacement cost of the furnace, which he sought for the first time in Fall 2012. Plaintiff notes that Allstate's November 13, 2012 denial of coverage to replace the furnace was "the first time Allstate denied any requests for payment for Plaintiff's real property damage" and put him "on notice for the first time that Defendant may not fully compensate him for the damage sustained to his home. . . ."[3] In November 2013, Plaintiff filed this lawsuit.

---

[3] Amend. Compl. ¶ 48-49.

3

**II.     Standard of Review**

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court also must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[4] In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."[5]

**III.    Discussion**

      1.     <u>Breach of Contract</u>

Plaintiff argues that Allstate's November 13, 2012 denial of coverage for damage to his furnace constituted a breach of its obligations under the insurance policy.

Allstate argues that the breach of contract claim is time barred by the one-year suit limitation provision in Section I of the insurance policy.[6] That provision, titled "Action Against Us," reads:

> No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which Section I Conditions applies unless:
>     a) there has been full compliance with all policy terms; and
>     b) the action is commenced within one year after the inception of the loss or damage.[7]

Reasonable suit limitations provisions in insurance policies are both valid and binding on the parties under Pennsylvania law.[8] Such a provision may serve as a bar to suit, unless the

---

[4] *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

[6] Section I of the policy provides coverage for damage to property, and is the only section applicable to Plaintiff's claims.

[7] Amend. Compl. Ex. A at 27.

[8] *Mattia v. Allstate Ins. Co.*, No. 14-2099, 2014 WL 2880302, at *3 (E.D. Pa., June 24, 2014); *Gen. State Auth. v. Planet Ins. Co.*, 346 A.2d 265, 266 (Pa. 1975) (holding that suit limitations provisions in insurance contracts are not contrary to public policy); *Commonwealth v. Transamerican Ins. Co.*, 341 A.2d 74, 76 (Pa. 1975).

insurer waives its right to rely thereon or its conduct estops it from doing so.[9] "[A]ny act which tends to mislead the plaintiff, while parties are dealing on friendly terms, to avoid litigation, will be held to be evidence of a waiver of a contractual litigation period."[10]

Plaintiff first argues that the statute of limitations on a breach of contract claim could not begin to run prior to the contract being breached, and Allstate acted in accordance with the contract up until Plaintiff filed an additional claim, for a loss suffered in March 2011, in November 2012. While it is true that the statutory limitations period for filing a breach of contract suit begins to run at the time of the breach, here, the parties have validly contracted to a different limitations period, which begins to run at the "inception of the loss or damage." Plaintiff concedes that, absent waiver or estoppel, such clauses are generally enforceable, but argues that "inception of the loss or damage" is an ambiguous term, which should be interpreted to mean the time of the insurer's breach. Alternatively, Plaintiff argues that Allstate has waived or should be estopped from enforcing the suit limitations provision.

The contractual suit limitations provision at issue, which governs claims brought for breach of terms set forth in Section I of the policy, states that the suit limitation period begins to run from the "inception of the loss or damage."[11] Although Plaintiff argues that the parties have a legitimate dispute regarding the meaning of the term "after the inception of the loss or damage," the Court holds that the term is unambiguous, and cannot fairly be interpreted to allow

---

[9] *Lardas v. Underwriters Ins. Co.*, 231 A.2d 740, at 742-43 (Pa. 1967).

[10] *Kedar Corp. v. Amer. Contractors Indem. Co.*, 2012 WL 440664, at * 8 (E.D. Pa., Feb. 7, 2012)(quoting *Fratto v. New Amsterdam Cas. Co.*, 252 A.2d 606, 608 (Pa. 1969).

[11] In contrast, a suit limitations provision appearing elsewhere in the policy, which governs actions *not* brought pursuant to the Action Against Us provisions in Sections I or II of the policy, provides that those actions must be commenced "within one year of the date the cause of action accrues." Amend. Compl. Exh. A at 17. The use of different language to establish suit limitations periods applicable to Section I claims, Section II claims, and all other claims is further evidence that the parties intended "inception of the loss or damage" to be interpreted according to its plain meaning (i.e. to mean the date of the loss or damage to the insured property), and not interpreted to mean the date of an alleged breach of contract.

one year from the date of an insurer's alleged *breach* of the insurance contract, as Plaintiff argues.[12]

To the extent that Plaintiff argues that the Court should apply the discovery rule to toll the suit limitations period until he could have, through the exercise of reasonable diligence, ascertained that he had been injured and by what cause,[13] the Court finds that this argument lacks merit. Under Pennsylvania law, the discovery rule does not apply to contractual suit limitations periods.[14] Interpreting a similar suit limitations clause, the Pennsylvania Supreme Court held that the twelve month limitation period is calculated from the date of loss, not from the date of discovery of the loss, reasoning that inception of loss deals with an objective fact, not the state of mind of the insured.[15]

Thus, the Court holds that the suit limitations period began to run from the dates of the insurable events, which can be determined as a matter of objective fact. Those dates are pleaded in the Amended Complaint. In this case, the water damage occurred on or about March 2, 2011, and the vandalism occurred at some point between March 2 and March 8, 2011. Under the plain terms of the policy, then, and barring waiver or estoppel, Plaintiff had one year from those dates to initiate his suit. Instead, he filed more than two years later, on November 11, 2013.

Plaintiff also argues that Allstate's actions during the adjustment of the claims constitute waiver or grounds for estoppel from enforcing the one year suit limitation provision. "Where the insurer affirmatively misleads the insured about the possibility of settlement, dissuades him from filing suit, or induces him to believe that it will not enforce the limitations period, courts construe

---

[12] *See Gen. State Auth.*, 346 A.2d at 267 (the limitations period runs from the date of the occurrence of the destructive event or casualty insured against).

[13] Plaintiff's Reponse (Doc. No. 8) at 11, citing *Knopick v. Connelly*, 639 F.3d 600, 609 (3d Cir. 2011).

[14] *Gen. State Auth.*, 346 A.2d at 268.

[15] *Id.*

6

this conduct as violative of the insurer's duty of utmost good faith and fair dealing" and will not interpret the clause strictly.[16] This argument is without merit. According to the allegations in the Complaint, both filed claims were promptly administered; estimates were provided, and payments were made. Plaintiff then had 180 days to make repairs or purchase replacements and request depreciation.[17] There are no allegations which support a finding that Allstate unfairly delayed addressing the claims submitted by Plaintiff during the one year suit limitation period, that Allstate misled him about the possibility of further payments, that Allstate otherwise induced Plaintiff to refrain from commencing suit, nor that it should be estopped from enforcing the suit limitation period for other equitable reasons. In addition, Plaintiff points to no actions, words, representations, or informal promises indicating that Allstate intended to waive the suit limitation provision.

The fact that Allstate pursued a subrogation action against National Restoration, seeking to recoup the insurance money it had paid to Plaintiff pursuant to the vandalism claim, does not change the Court's analysis. The Court cannot agree that the "subrogation claim can reasonably be interpreted as an admission that Plaintiff had not yet received the full insurance benefits for the damages sustained in his home, and more insurance benefits were to come."[18] That is simply a misunderstanding of the purpose of a subrogation claim; Allstate's obligations to Plaintiff under the policy are not affected in any way by its success or failure in a subrogation suit. The facts alleged do not support an inference that Allstate was responsible for Plaintiff's misunderstanding of the purpose of the subrogation suit. Additionally, Plaintiff acknowledges that the subrogation action was commenced thirteen months after the losses occurred—outside of

---

[16] *Pini v. Allstate Ins. Co.*, 499 F.Supp. 1003, 1004 (E.D. Pa. 1980) (citing *Leone v. Aetna Casualty & Surety Co.*, 599 F.2d 566, 569 (3d. Cir. 1979).

[17] The Amended Complaint does not indicate whether Plaintiff pursued depreciation.

[18] Plaintiff's Response (Doc. No. 8) at 14.

the suit limitations period—and thus, the Court cannot find that the subrogation action induced Plaintiff to refrain from taking timely action against Allstate.  Finally, Plaintiff has pleaded no facts suggesting that Allstate voluntarily and intentionally waived its right to enforce the suit limitations period, in the course of the subrogation action or otherwise.

    2.    <u>Statutory Bad Faith</u>

Plaintiff has alleged statutory bad faith under Pa. Const. Stat. Ann. § 8371, claiming that Allstate acted in bad faith when it failed to fully indemnify him for losses from the water leak and vandalism. Allstate moves for dismissal of this claim only on the basis that it is time-barred by the applicable statute of limitations. The Third Circuit allows defendants to raise such a defense on a motion to dismiss when the pleadings show, on their face, that the action has been brought outside the statute of limitations.[19] That is not the case here.

Pennsylvania courts apply a two-year statute of limitations to insurance bad faith claims.[20] For purposes of § 8371, the Court generally must look to the date on which the defendant insurance company is alleged to have first denied the insured's claim in bad faith.[21] Plaintiff alleges that Allstate acted in violation of § 8371 when it denied his claim for the replacement value of his damaged furnace, in November 2012. He filed suit approximately one year later, in November 2013. Thus, although Plaintiff alleges that some bad-faith conduct occurred more than two years before the Complaint was filed (e.g. Allstate's failure to properly investigate the claim), the Court will not dismiss the claim as time-barred on this Motion.  This ruling is without prejudice to Allstate's right to reassert the statute of limitations as an

---

[19] *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975).

[20] *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 885 (Pa. 2007).

[21] *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 224-25 (3d Cir. 2005); *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F.Supp.2d 354, 365 (E.D. Pa. 2009 )(citing *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1038-43 (Pa. Super. 1999).

affirmative defense at a later stage in the litigation, should the facts of the case support such a defense.

      3.    <u>Common Law Bad Faith</u>

In his first Amended Complaint, Plaintiff includes, for the first time, a new cause of action against Allstate for common law bad faith. Except in rare circumstances, a separate claim for common law bad faith does not exist independent of a breach of contract action, as good faith is a presumed requirement of every contract.[22] Barring unique circumstances, a claim for breach of the implied duty of good faith and fair dealing merges with a breach of contract claim.[23] As Plaintiff does not plead any usual circumstances in Count III of his amended complaint, such as conduct separate and apart from the conduct underlying the breach of contract claim, the Court will dismiss this claim for common law bad faith.

## IV. Conclusion

Plaintiff did not file his breach of contract claim within the contractual suit limitations period, and thus his breach of contract is time-barred by the terms of his insurance policy. Plaintiff's claim for common law bad faith must also be dismissed, as it merges with his breach of contract claim. However, the Court cannot find that Plaintiff's statutory bad faith claim is time barred by the applicable statute of limitations, based upon the facts alleged in the Amended Complaint and will deny the motion to dismiss the statutory bad faith claim without prejudice to Allstate's right to reassert this affirmative defense, when and if appropriate.

---

[22] *Tubman v. USAA Cas. Ins. Co.,* 943 F.Supp.2d 525, 529 (E.D. Pa. 2013) (collecting cases); *Excelsior Ins. Co. v. Incredibly Edible Delites*, No. 09-3198, 2009 WL 5092613, at *3 (E.D. Pa., Dec. 17, 2009).

[23] *Tubman*, 943 F.Supp.2d at 529 (citing *Zaloga v. Provident Life and Acc. Ins. Co. of Am.*, 671 F.Supp.2d 623, 629 (E.D. Pa. 2009)).