IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
SHARIFF BLACKWELL,               :
      Plaintiff,                        :
    v.                                           :    CASE NO. 14-878
                                              :
ALLSTATE INSURANCE CO.,          :
      Defendant.                       :
_____:

## MEMORANDUM OPINION

**RUFE, J.**                                                                                              **August 31, 2015**

      Plaintiff Blackwell brought an action against defendant Allstate Insurance Co. for breach of contract, statutory bad faith, and common law bad faith. The Court previously dismissed the breach of contract claim for failure to file suit within the applicable limitations period, and also dismissed the common law bad faith claim. Now, Allstate moves for summary judgment on the statutory bad faith claim, arguing that this claim is also barred by the applicable statute of limitations, and further arguing that Allstate is entitled to summary judgment on the merits.

**I.**    **Factual Background**[1]

      On or about March 2, 2011, Plaintiff's home at 5649 Sprague Street, Philadelphia, Pennsylvania was damaged by water when a shut-off valve in a second floor bathroom failed. At that time, Plaintiff had a homeowner's insurance policy issued by defendant Allstate, with a policy period of June 7, 2010 until June 7, 2011.[2]

      Plaintiff immediately retained Hillis Public Adjusters to assist him in filing an insurance

---

[1] The facts set forth herein are taken from the Statement of Stipulated Material Facts, except where otherwise noted.

[2] For each instance of water damage and vandalism, the policy allows up to $184,084 in compensation for vandalism to the dwelling, $101,901 for damage to personal property, and $18,408 for living expenses due to loss of use of the dwelling.

claim for damages. Hillis contacted Allstate on or about March 4, 2011, to initiate a claim for the water damage. Allstate took Plaintiff's recorded statement on that day.

Also on March 4, 2011, Hillis hired a water remediation company, National Restoration and Facilities Services, to mitigate the damage to Plaintiff's home. Before Allstate could conduct its inspection of the water damage, National Restoration began tearing out portions of Plaintiff's property. It tore out walls and ceilings in multiple rooms, pulled up all of the carpets upstairs, removed all fixtures in a bathroom, as well as the floor and subfloor, and removed the basement walls.

On March 8, 2011, Allstate provided an Advanced Payment Agreement to Plaintiff, which Plaintiff signed the following day. After the agreement was signed, Allstate placed Plaintiff and his daughter at a Residence Inn in Philadelphia, pending the investigation and repair of their home.

A representative of Allstate, Lou Mincarelli, inspected the property on March 8, 2011, spoke with Plaintiff's plumbing contractor, and documented both the water damage and the tear-out in progress by National Restoration. That same day, Mincarelli retained an engineer, Plick and Associates, to determine whether National Restoration had performed unnecessary demolition. Allstate provided Plaintiff and his public adjuster with a reservation of rights letter on March 9, 2011. The engineer inspected the property on March 16, 2011, in the presence of Plaintiff, Hillis, and Michael Laws of One Focus Home Remodelling. The engineer provided a report to Allstate on April 13, 2011.

On May 3, 2011, Plaintiff fired Hillis. On May 5, 2011, Allstate advised Plaintiff of the need to set up a new claim for vandalism, as some of the damage to the home was caused by the unnecessary and destructive remediation work of National Restoration. Allstate took recorded

statements from Plaintiff and Laws, and then the home was re-inspected by Mincarelli on May 25, 2011, to determine which damage was caused by water and which was caused by National Restoration. After the interviews and inspection, and taking into account the estimate for repairs provided by Laws, Mincarelli prepared two estimates. On June 22, 2011, Allstate issued two checks, jointly to Plaintiff and Laws's company, One Focus. A check for $8,436.74 was issued for damage caused by the shut-off valve, and a check for $6,304.78 was issued for damage caused by National Restoration. Both checks were endorsed by both Plaintiff and One Focus.

On July 5, 2011, Laws contacted Mincarelli and explained that he needed additional money to repair joists in the dining room ceiling and in the basement. He prepared an estimate, and Allstate issued the requested payment ($680) on July 11, 2011.

On April 10, 2012, Allstate initiated a subrogation action against National Restoration in Philadelphia Municipal Court, seeking reimbursement of the money paid to Plaintiff for the vandalism claim. The court ruled in favor of Allstate on August 23, 2012. On September 4, 2012, National Restoration appealed this ruling in the Court of Common Pleas, and joined Plaintiff personally as a party to the action. Plaintiff countersued National Restoration for damages. A judgment was entered in favor of Plaintiff and Allstate on February 6, 2013. National Restoration appealed again, but ultimately the claims were settled.[3]

In the midst of this litigation, on November 6, 2012, Plaintiff contacted Allstate and requested replacement of his furnace, indicating that it was inoperable due to the March 2, 2011 shut-off valve failure. Allstate had included money to service, but not replace, the furnace in its June 22, 2011 estimate. Allstate denied the claim on November 13, 2012, explaining that an

---

[3] Plaintiff also filed a suit against Hillis in the Philadelphia Court of Common Pleas, in February 2013. These claims were settled in May 2014.

unreasonable amount of time had passed between the initial claim and the discovery of the damage to the furnace. On November 11, 2013, Plaintiff filed this lawsuit.

## II. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and movant is entitled to judgement as a matter of law."[4] A fact is material if it "might affect the outcome" of the case.[5] The moving party has the initial burden of "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."[6] The non-moving party then has the burden to produce sufficient evidence that would allow a reasonable jury to find in his favor.[7] The court must "draw all inferences in favor of the nonmoving party to the extent supportable by the record."[8]

## III. Discussion

Plaintiff has alleged statutory bad faith,[9] claiming that Allstate acted in bad faith when it: 1) failed to promptly investigate claims and provide indemnification; 2) failed to conduct a reasonable investigation of his claims; 3) unreasonably failed to fully indemnify Plaintiff. Defendant argues that the bad claim is time barred by the applicable statute of limitations, and further argues that the bad faith claim is without merit, as Defendant acted promptly, provided a proper investigation, provided replacement value indemnification for an agreed upon amount, and had a reasonable basis for its coverage decisions regarding the shut-off valve claim and the vandalism claim.

---

[4] Fed. R. Civ. P. 56(a).

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[6] *Id.* at 325.

[7] *Anderson*, 477 U.S. at 248.

[8] *Phillips v. Nw. Reg'l Commc'ns*, 669 F. Supp. 2d 555, 569 (W.D. Pa. 2009), *aff'd* 391 F. App'x 160 (3d Cir. 2010) (internal citation, quotations, and emphasis omitted).

[9] 42 Pa. Const. Stat. Ann. § 8371.

    A.    <u>Statute of Limitations</u>

In Pennsylvania, insurance bad faith claims under § 8371 are subject to a two-year statute of limitations.[10] For purposes of determining the statute of limitations, the Court generally must look to the date on which the defendant insurance company is alleged to have acted in bad faith (e.g. the date the claim is denied, the date an unduly delayed claim is finally paid, or the date the allegedly inadequate check is issued).[11] The tolling of the statute begins at the time of the initial breach, even if the extent of the damage has not yet been determined.[12]

Allstate first inspected Plaintiff's property in March 2011, very soon after the shut-off valve claim was reported. It had an engineer inspect it later in March, and reinspected it in May 2011 when it determined that two claims—one for water damage and one for vandalism—were required. It issued checks to cover the cost of repairs in June and July 2011, in an amount Allstate's adjuster and Plaintiff's contractor agreed was sufficient to cover the cost of restoring the property to its original condition. Because the checks were jointly issued to Plaintiff and his contractor, Allstate did not hold back any depreciation on the loss, but provided full replacement value, minus a $1000 deductible for each claim. In July 2011, Allstate issued a supplemental check, in an amount requested by Laws, to replace a damaged joist.

Plaintiff did not seek any additional coverage until November 2012, when he submitted a claim for the replacement value of his furnace.[13] He explains that, in the months that followed the incidents giving rise to his insurance claims, he was overwhelmed, suffering from medical

---

[10] *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 885 (Pa. 2007).

[11] *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 224-25 (3d Cir. 2005); *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F.Supp. 2d 354, 365 (E.D. Pa. 2009) (citing *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1038-43 (Pa. Super. Ct. 1999)).

[12] *Adamski*, 738 A.2d at 1041-42.

[13] Although Plaintiff notes that Laws told him the repairs would cost $40,000-$45,000, and that the $15,000 coverage provided by Allstate was not enough to complete repairs to his home, Laws testified that he did agree with the Allstate adjuster's assessment that approximately $15,000 was sufficient to repair (but not upgrade) the property.

problems, and, for a period of time, did not care about repairing his house and even stopped paying his mortgage.[14] However, he does not indicate that these problems persisted for years. Plaintiff had until July 2013 to bring timely suit, and provides no explanation as to why he did not. His failure to do so is especially noteworthy because Plaintiff's attorney contacted Allstate in February 2013, by email, and asserted that Allstate had failed to provide sufficient reimbursement to cover the costs of all necessary repairs in 2011.[15] Allstate promptly responded to counsel, by letter dated February 18, 2013, stating that Allstate would not provide additional coverage for the loss.[16] Yet, Plaintiff waited until November 2013 to file this suit.

Because Plaintiff filed his Complaint more than two years after the final check was issued, in July 2011, Plaintiff is "barred from bringing suit, unless some exception which tolls the statute of limitations can be proven."[17] Plaintiff does not argue that his 2012 and 2013 requests for additional coverage restarted the limitations period or constituted distinct bad-faith actions by Allstate. Rather, Plaintiff contends that the doctrine of equitable estoppel applies, and therefore Defendant should be prevented from raising the statute of limitations defense, and Plaintiff should be permitted to bring an otherwise time-barred claim.[18]

Equitable estoppel may be invoked where a defendant, "through fraud or concealment, [] causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts."[19] A plaintiff must prove the following elements – "(1) fraudulent concealment; (2) failure on the part of the plaintiff to discover his cause of action notwithstanding such concealment; and (3) that

---

[14] See Doc. No. 26 at 9-10.

[15] Doc. No. 19, Exh. II.

[16] Doc. No. 19, Exh. JJ.

[17] *U.S. Bank, Nat. Ass'n v. First Am. Title Ins. Corp.*, 570 F. App'x 209, 212 (3d Cir. 2014) (quoting *Ward v. Rice,* 828 A.2d 1118, 1121 (Pa. Super. Ct.2003) (internal quotation marks omitted)).

[18] *U.S. Bank, Nat. Ass'n*, 416 F.3d at 212-13.

[19] *Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005) (citing *Deemer v. Weaver*, 187 A. 215 (Pa. 1936)).

such failure to discover occurred [notwithstanding] the exercise of due care on the part of the plaintiff"[20] – by "clear, precise and unequivocal evidence."[21] A plaintiff cannot point to the defendant's "mistake, misunderstanding, or lack of knowledge;"[22] rather, there must be evidence of an "affirmative and independent act of concealment that would divert or mislead the plaintiff" from discovering his injury.[23]

Plaintiff argues that he was deceptively lulled into inaction, and therefore Allstate should be estopped from claiming the defense of untimeliness. Specifically, he argues that Allstate falsely represented to him that all of his losses would be covered through Allstate's subrogation action against National Restoration. The parties dispute whether Defendant made any oral misrepresentations to Plaintiff regarding the subrogation lawsuit; however, in light of written communications, this dispute is not material. A letter dated August 26, 2011 from Allstate's counsel to Plaintiff[24] clearly explains that Defendant was not representing Plaintiff's interests in the subrogation suit, that Plaintiff could bring his own claim against National Restoration if he had personal losses, that Allstate recommended speaking to an attorney "of your own choosing" if he intended to bring his own claims against National Restoration,[25] and any money that Allstate recovered as a result of the subrogation action or settlement of its action would not be for the benefit of Plaintiff. Thus, any misleading oral communications were corrected in writing, and any reliance on oral statements contrary to the letter was not reasonable or justified.

---

[20] *In re Aspartame Antitrust Litig.*, 416 F. App'x 208, 211 (3d Cir. 2011) (quoting *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 160 (3d Cir. 2002) (internal quotation marks omitted).

[21] *Molineux v. Reed*, 532 A.2d 792 (Pa. 1987).

[22] *Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir. 1991) (quoting *Nesbitt v. Erie Coach Co.,* 204 A.2d 473 (Pa. 1964) (internal quotation marks omitted)).

[23] *Id.* (citing *Gee v. CBS, Inc.*, 471 F. Supp. 600, 623 (E.D. Pa. 1979)).

[24] Doc. No. 27, Exh. B.

[25] Plaintiff did, in fact, file his own claims against National Restoration.

7

Moreover, Plaintiff points to no evidence demonstrating that Allstate was aware of any losses which had not already been covered by the checks issued in 2011 when the subrogation action was initiated. In fact, the August 26, 2011 letter indicated that Allstate's attorney understood that "there was nothing damaged [by the vandalism] for which Allstate did not pay" and advised Plaintiff to let counsel know if her understanding was incorrect.[26] Without evidence that Allstate was aware that Plaintiff had not been fully compensated, Plaintiff cannot prove that any misleading statements about the purpose of the subrogation action were made for the purpose of deterring him from discovering his injury or from pursuing an action against Allstate.

Because Plaintiff has not established that an equitable exception to the two-year statute of limitations applies, the Court holds that his bad faith claim must be dismissed as time barred.

B. The Merits of the Claim

Even if the bad faith claim were not time barred by the applicable statute of limitations, the factual record establishes as a matter of law that the claim is without merit.

Under Pennsylvania law, an insurance company acts in bad faith when it refuses to pay proceeds of a policy without valid grounds to do so.[27] Here, Plaintiff argues that Allstate acted in bad faith when it: 1) failed to promptly investigate claims and provide indemnification; 2) failed to conduct a reasonable investigation of his claims; 3) unreasonably failed to fully indemnify Plaintiff. The Court will address these claims in turn.

There is no evidence in the record from which the Court can infer that Allstate failed to promptly investigate Plaintiff's claims, or unduly delayed in determining or providing coverage. The claims were reported in March 2011; the inspection was conducted and adjustment initiated

---

[26] Doc. No. 27, Exh. B.

[27] 42 Pa. C.S.A. § 8371; *Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994).

within days of the report. In addition, funds for alternate housing were made available within days of the report. And checks were issued to cover the cost of repairs in June 2011, and supplemented promptly at the contractor's request in July 2011.

With regard to the adequacy of the investigation of Plaintiff's claims, all evidence suggests that Allstate's investigation was reasonable. Confronted with a destructive tear-out that occurred before Allstate could conduct an inspection of the preceding water damage, Allstate interviewed Plaintiff, hired an engineer, interviewed Laws (who was present both before and during the tear-out), and performed two inspections of the property, before assessing the damage and determining under which claim various items would be covered.

Finally, with regard to the charge that Allstate unreasonably failed to fully indemnify Plaintiff for his losses, Plaintiff argues that when it sought reimbursement for additional repairs in 2012 and 2013, the rejection of those claims as untimely is evidence of bad faith. However, Plaintiff has failed to put forth evidence demonstrating that Allstate knew that the furnace needed to be replaced prior to Plaintiff's claim in November 2012. Moreover, Allstate provided coverage for the cost of servicing the furnace in 2011; presumably the need for replacement would have been detected and reported to Plaintiff (but not Allstate) if Plaintiff had had the furnace serviced in 2011. However, Plaintiff testified that he did not have the furnace inspected until November 2012.

Similarly, Plaintiff points to no evidence demonstrating that Allstate knew or should have known that the checks it issued in 2011 were inadequate to complete all necessary repairs. The record evidence, including the contractor's deposition testimony, indicates that Allstate had issued checks in amounts that Plaintiff's own contractor agreed were sufficient to restore the property to its previous condition. Even after the subrogation action was initiated in April 2012,

9

there is no evidence that Plaintiff informed Allstate that his house remained in need of significant repairs.

Because there is no issue of material fact as to whether Allstate behaved reasonably in adjusting the claims in 2011, or as to whether it acted reasonably in rejecting claims as untimely in 2012 and 2013, the Court would grant the Motion for Summary Judgment on the merits had the Court not found that the claims were not timely filed.

## IV. Conclusion

For the reasons set forth herein, Defendant's Motion for Summary Judgment is granted. An appropriate order follows.